IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:19CR30 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| DESHAUN A. JONES, | ) | RESPONSE TO MOTION TO |
| | ) | WITHDRAW PLEA OF GUILTY |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Christopher J. Joyce, Assistant United States Attorney, and hereby submits the following Response to the Defendant's Motion to Withdraw Plea of Guilty.

## I.  Statement of Facts.

On October 1, 2018, shortly after 9:00 PM, officers from the Akron Police Department responded to a 911 call, which reported that gunshots had been fired in the area of 823 Huber Avenue.  Upon arrival, officers approached a naked man standing in front of 823 Huber Avenue and ordered him to the ground.  The male was identified as Deshaun Jones and was placed under arrest.  While detained on scene, Jones' demeanor fluctuated dramatically between angry, jovial and cooperative.  During his detention, Jones was very talkative and volunteered numerous statements which were captured by several of the body-worn cameras of the police officers on scene.[1]

---

[1] Approximately ten officers, all of whom were wearing audio and video recording devices, responded to the scene. The officers' body-worn cameras captured the defendant, his statements, the statements of eyewitnesses and the crime scene.

Jones told the police that members of his family lived at 823 Huber Avenue and that he had placed a gun in the backyard.  Jones initially offered to help them find the gun, but then told the officers to do their job and find it themselves.  After officers searched for the gun with no success, Jones agreed to lead them to it.  Several different officers' bodycams captured Jones leading officers to the area of the gun, then gesturing to its exact location among tall grass and/or weeds in the back of 823 Huber.  The backyard of 823 Huber was completed surrounded by a chain-link fence, the entrance to which was padlocked.

While Jones was showing officers where the gun was located, bodycam footage captured him attempting to kick a shell casing off of the driveway and into the grass.  Officers recovered the shell casing and determined that it matched the caliber of ammunition in the firearm.  Laboratory forensic testing later confirmed that the shell casing discovered at 823 Huber was from a bullet that was fired from the handgun that was recovered on scene.  Officers also discovered the window of 823 Huber that was nearest to the recovered firearm had been penetrated by a bullet.

Among the statements Jones made to the law enforcement officers, was a description of his version of the events.  Jones stated that he was walking on the sidewalk of Huber Avenue when he was attacked from behind by several men.  Jones claimed that he wrestled a gun from his attackers, fired the gun, and then discarded it in the backyard of 823 Huber Avenue.  Jones also stated that he ran across the street and knocked on the door to a house and insisted that the occupant drive him somewhere.  When the occupant refused to either give Jones his car or drive him to some unknown location and closed his door, Jones then stripped his clothes off and damaged the exterior of the home.  Jones then went back across the street to the area of 823 Huber.

As a part of the investigation, responding officers spoke with the occupants of 823 Huber Avenue, which included Ivonne West – Jones' aunt.  In an interview on scene, which was recorded by the officer's bodycam, Ms. West stated that Jones fired a gun into the house.  She stated that when he fired into the house, she ordered the children in the house onto the floor and covered them with her body to protect them.  In a second recorded interview on the same night, Ms. West stated she had observed Jones with a large black gun the day before this happened.  Ms. West also made statements which suggested that Jones was under the influence of some sort of drug.

While at the hospital later on October 1, 2018, Jones stated that he fired the gun earlier that night so that he could elicit help from his family inside 823 Huber Avenue since he could not shout loud enough for them to hear him.  His theory being that the sound of a gunshot in close proximity to the house would draw out the occupants.  Jones has since stated that after he fired the gun for help, he walked across Huber Avenue and knocked on a neighbor's door to ask for help.  After he spoke to that person, and did not get the assistance he sought, he stripped off his clothing and damaged the exterior of the home in order to elicit a police response.

## II.	Procedural History.

On January 16, 2019, the defendant was indicted for One Count Felon in Possession of a Firearm.  On March 11, 2019, the defendant, through then-counsel Damian Billak, filed a Notice of Intent to Plead Guilty.  On March 18, 2019, Mr. Billak moved to withdraw as counsel and Barry Ward was appointed to represent Mr. Jones.  On April 25, 2019, the defendant entered a guilty plea to the indictment.  On September 10, 2019, the sentencing hearing in this matter began and an audio and video recording as captured by a bodycam of an Akron Police Officer present at the crime scene on the night of October 1, 2018 was played in open court.  The

balance of the hearing was continued until September 17, 2019.  On September 17, 2019, the defendant made an oral motion to withdraw his guilty plea.  The defendant filed a written motion to withdraw his guilty plea on October 1, 2019.

### III.     Legal Standard.

Pursuant to Fed.R.Crim.P. 11(d)(2)(B) "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  A denial of a defendant's motion to withdraw a plea is reviewed for abuse of discretion.  *See United States v. Benton*, 639 F.3d 723, 726–27 (6th Cir.2011).  "A district court abuses its discretion where 'it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir.1998).

"In the Sixth Circuit, as in other circuits, a multi-factor balancing test has been developed to guide district courts in deciding whether to grant a motion to withdraw a guilty plea.  The factors in this circuit are the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008).

"No one factor controls; the list is general and nonexclusive." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996). "The relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987). "Plea withdrawals should

generally not be allowed where a defendant has made a tactical decision to enter a plea, wait[ed] several weeks, and then ... believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991) (quoting United *States v. Carr*, 740 F.2d 339, 345 (5th Cir.1984)). Rather, Rule 11(d)(2)(B) is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone...." *Alexander*, 948 F.2d at 1004. See *United States v. Haygood*, 549 F.3d 1049, 1052–53 (6th Cir. 2008).

### A. *Rehaif v. United States*.

On June 21, 2019, the United States Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019). In *Rehaif*, the Court held that in a prosecution for possession of a firearm by a restricted person in violation of 18 U.S.C. 922(g)(1), the government must prove both that the defendant knew he possessed the firearm and that he knew he belonged to the relevant category of restricted persons. Shortly after the United States Supreme Court reached its decision in *Rehaif*, the Department of Justice issued a policy to be followed by Federal Prosecutors in 922(g)(1) cases that were charged prior the *Rehaif* decision, but had not yet reached the sentencing phase of the case. The DOJ Policy stated that if a defendant moved to withdraw a guilty plea that did not include any accompanying admission as to the knowledge of status in the factual recitation or at the plea colloquy, the government is to acquiesce. Given that the defendant in this case pled guilty prior to the *Rehaif* decision and there was no admission as to the knowledge of his status, the government does not oppose the defendant's Motion to Withdraw his Plea.

**IV. Conclusion.**

For the reasons stated above, the government does not oppose the defendant's Motion to Withdraw his Plea.

                                              Respectfully submitted,

                                              JUSTIN E. HERDMAN
                                              United States Attorney

By:   /s/ Christopher J. Joyce
        Christopher J. Joyce (OH: 0086576)
        Assistant United States Attorney
        208 Seiberling Federal Courthouse
        Two South Main Street
        Akron, OH 44308
        (330) 761-0521 FAX: (330) 375-5492
        Christopher.Joyce@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 6th day of October 15, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

    /s/ Christopher J. Joyce
    Christopher J. Joyce
    Assistant U.S. Attorney